# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **RICKEY ERROL OWEN** | ) | **Case No. 03-21846-TLM** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| **RICKEY ERROL OWEN** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Adv. Case No. 04-6181-TLM** |
| | ) | |
| **JILL LUNDSTROM; IDAHO** | ) | |
| **TRANSPORTATION** | ) | |
| **DEPARTMENT, DEPARTMENT** | ) | |
| **OF THE STATE OF IDAHO; JOHN** | ) | |
| **DOES 1-10,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Rickey Errol Owen ("Owen") filed a petition for bankruptcy relief

on November 18, 2003. Prior to filing his bankruptcy petition, Owen was

involved in state court litigation with Defendant Jill Lundstrom ("Lundstrom").

Owen listed Lundstrom as a secured creditor on his schedules, but noted the

obligation was disputed and that she had an "unsubstantiated claim of lien" in a

MEMORANDUM OF DECISION - 1

1977 GMC, a 1986 Isuzu, and a 1982 Yamaha (the "vehicles"). *See* Doc. No. 1 at

Schedule D.[1]  Owen amended his schedules several times to list the vehicles and

claim them as exempt. *See* Doc. No. 1, 11 and 22.  The chapter 7 trustee did not

object to Owen's claimed exemptions and his bankruptcy case was closed on April

27, 2006.

In August, 2004, Owen initiated the present adversary proceeding against

Lundstrom and the Idaho Transportation Department ("ITD"), seeking the return

of the certificates of title from Lundstrom and an order directing the ITD to issue

new certificates of title for the vehicles.[2]  After many procedural hurdles, a trial

was held on June 1, 2006.[3]  Lundstrom and Owen submitted written closing

---

[1]  The Court takes judicial notice of its records in both the adversary proceeding and the bankruptcy case pursuant to Fed. R. Evid. 201.  When referencing the adversary proceeding, the Court will refer to filed pleadings and papers as "Adv. Doc. No. __" and when referencing the bankruptcy case, the Court will refer to them as "Doc. No. __."

[2]  Owen further requested the Court order ITD to place William Arthur Smyth as lienholder on the certificates of title.  *See* Doc. No. 1.  However, given the Court's April 8, 2004 Order denying the proposed reaffirmation between Owen and Smyth, such a request must be denied.  *See* Doc. No. 25.

[3]  ITD filed a "Notice of Non-Participation" and did not participate at trial.  *See* Doc. No. 69.  While it asserted immunity from suit under the Idaho Tort Claims Act as an affirmative defense, *see* Adv. Doc. No. 4 (ITD answer), it did not move for summary judgment based on such a defense nor did it appear at trial and advance its defense.  The party asserting an affirmative defense has the burden of proof on that defense.  *See Fox v. Citicorp Credit Srvs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994); *Womack v. Eggebrecht (In re Demis)*, 191 B.R. 851, 857 (Bankr. D. Mont. 1996).  By choosing not to participate at trial, the ITD risked entry of an adverse judgment.  ITD may have viewed the lawsuit as a matter "between the Lien-holder, Defendant: Lundstrom and the Plaintiff, Debtor" but Owen's complaint named ITD as a defendant and sought "costs including filing fees, service fees, legal research and secretarial work, copies and transcribing" and other relief as the Court determined just and equitable.  *See* Adv. Doc. No. 69 at 2; Adv. Doc. No. 1 at 5.  Such relief was sought against both defendants, and Owen argued throughout the
(continued...)

MEMORANDUM OF DECISION - 2

arguments on June 8, 2006, and the matter was taken under advisement. The
following constitutes the Court's findings of fact and conclusions of law as
required by Fed. R. Bankr. P. 7052.

**FACTS**

Owen and Lundstrom lived together between the fall of 2001 and the
summer of 2002. During that time, Lundstrom loaned Owen money on three
separate occasions. Lundstrom did not request promissory notes, IOUs or any
form of collateral at the time she loaned the money. However, as time went by
without payment, Lundstrom decided documentation and security were needed.
Owen thereafter signed three separate IOUs.[4] *See* Ex. 1, Exs I, J, K. The parties
dispute whether Owen also gave Lundstrom a security interest in the vehicles to
ensure payment of the IOUs.[5]

According to Lundstrom, Owen also agreed to give her a security interest in

---

[3](...continued)
litigation the ITD's actions warranted entry of a monetary judgment for various costs and
punitive damages. *See* Adv. Doc. No. 93 at 8-12. The ITD's approach to this case was a risky
one at best, and not one the Court commends.

[4] The original, aggregate debt on the three IOUs was $3,545.00. The IOUs do not
provide for interest accrual, and as of August 27,2002, the parties agree the balance due on the
IOUs was $2,920.01. *See* Ex. 1, Exs I, J, K. There was inadequate proof as to any other
payments. In addition, Owen's assertion that his tender of payment in sealed envelopes addressed
to Lundstrom which were returned unopened extinguished the debts is without merit.

[5] The parties spent a great deal of time arguing about whether money was also owed to
Lundstrom for living expenses, or to Owen for work performed around the residence. As
Lundstrom did not prove the vehicles were intended to be security for any debt other then the
documented IOUs, the debate is not relevant to the matter before the Court.

MEMORANDUM OF DECISION - 3

the vehicles collateralizing the IOUs.  While no document entitled "Security

Agreement" was signed by Owen, Lundstrom contends Owen signed off on and

gave her the certificates of title for the three vehicles, intending to provide her

with a security interest in those vehicles.  Lundstrom later placed her name in the

lienholder section on the Owen-signed certificates of title and took them to the

Department of Motor Vehicles in Bonner County where she applied for new titles

naming her as a lienholder.

Owen disagrees with Lundstrom's version of events.  He claims the vehicle

titles were signed to provide security to a different creditor (Smythe) who

ultimately decided Owen should keep the titles.  Owen claims the signed

certificates of title were in his files and that Lundstrom took them without his

permission after the parties terminated their living arrangement.  Owen further

claims he never intended to provide Lundstrom with a security interest in the

vehicles.

Owen argues Lundstrom was and is an unsecured creditor and that her

claim was discharged.  He further argues that her refusal to return the certificates

of title and remove her name as lienholder violates the discharge injunction.[6]

Owen seeks a "declaratory decree" regarding Lundstrom's status as a lienholder,

issuance of new certificates of title eliminating Lundstrom as a lienholder, and an

---

[6]  While Owen makes these arguments, his complaint does not raise the issue of violation
of the discharge injunction.  *See e.g.* Adv. Doc. No. 93 at 5-6.

MEMORANDUM OF DECISION - 4

award of costs and fees.

**DISCUSSION AND DISPOSITION**

Generally, liens that are not avoided pass through bankruptcy unaffected.

*See In re Watson*, 192 B.R. 739, 749 n.8 (9th Cir. BAP 1996) (citing *Dewsnup v.*

*Timm*, 502 U.S. 410, 417 (1992)); *Elsaesser v. Crossland Mtg. Corp (In re*

*Tondee)*, 01.3 I.B.C.R. 113, 115 (Bankr. D. Idaho 2001); *In re Koski,* 93 I.B.C.R.

8, 9 (Bankr. D. Idaho 1993).  Thus, a secured creditor may enforce its lien against

encumbered property post-petition (once the stay has been terminated).  However,

like unsecured creditors, a secured creditor is enjoined from collecting any amount

from the debtor as a personal liability.  *See Tondee*, 01.3 I.B.C.R. at 115.  Here,

Owen alleges Lundstrom is an unsecured creditor while Lundstrom asserts she is a

secured creditor based on the signed certificates of title she says were delivered to

her by Owen.  *See* Exs. E, F, G.

The nature and extent of security interests are determined by state law.

*Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944

F.2d 500, 502 (9th Cir. 1991).  With respect to motor vehicles, the attachment of a

security interest is governed by Revised Article Nine of the Uniform Commercial

Code as codified in Idaho Code § 28-9-101 *et. seq.*[7]  Perfection of that interest is

---

[7]  Revised Article Nine, effective July 1, 2002, controls the determination of secured
status in this case.  *See In re Wiersma*, 283 B.R. 294, 299, 02.3 I.B.C.R. 143, 144 (Bankr. D.
Idaho 2002) (explaining the effective dates and application of Revised Article Nine).

MEMORANDUM OF DECISION - 5

governed by the Idaho Vehicle Titles Act, Idaho Code §§ 49-501–530.[8]  *See*

*Simplot v. Owens*, 805 P.2d 449, 450 (Idaho 1990), *Simplot v. Owens*, 805 P.2d

477, 479-80 (Idaho Ct. App. 1990) (citing Idaho Code § 49-512).

Under Idaho Code § 28-9-203, a security interest attaches to collateral and

becomes enforceable against the debtor and third parties when "(1) value has been

given; (2) the debtor has rights in the collateral or the power to transfer rights in

the collateral to a secured party; and (3) . . . (A) the debtor has authenticated a

security agreement that provides a description of the collateral . . . ."  Idaho Code

§ 28-9-203.[9]

It is clear that some form of writing or record is required to satisfy these

requirements.  *See* Idaho Code § 28-9-203 cmt. 3 (explaining that "enforceability

requires the debtor's security agreement and compliance with an evidentiary

requirement in the nature of a Statute of Frauds.").  The Idaho Code defines

"security agreement" as "an agreement that creates or provides for a security

interest."  Idaho Code § 28-9-102(73).  "Agreement" is then defined as "the

bargain of the parties in fact as found in their language or by implication from

---

[8]  An exception exists if the vehicles are held as inventory for sale.  The exception is inapplicable here.

[9]  Only the third requirement is at issue in this case.  Under the UCC, "authentication" means either "to sign" or to "otherwise adopt a symbol, or encrypt or similarly process a record . . . ."  Idaho Code § 28-9-102(7).  The term "authenticate" generally replaces the language in Former Article Nine requiring debtors to "sign" a written security agreement so as to now include all authenticated records, including intangible computer generated records and not just tangible writings, within the concept of a security agreement.  Idaho Code § 28-9-102 cmt. 9(b).

MEMORANDUM OF DECISION - 6

other circumstances including course of dealing or usage of trade or course of performance[.]" Idaho Code § 28-1-201(3). And "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Idaho Code § 28-1-201(37).

The parties agree that there is no document entitled "Security Agreement." Instead, we have writings (the certificates of title) that specifically identify the collateral (the vehicles). Owen signed the certificates of title in a section transferring his interest in the vehicles.[10] Such signatures are ambiguous as to what was intended by the parties. Whether Owen intended to transfer his complete ownership interest in the vehicles or transfer a partial, lien interest is not clear. Thus the question before the Court is whether the debtor-signed certificates of title present in this case are sufficient to constitute a security agreement under Idaho law.

Idaho courts take a liberal view of the elements required to create an enforceable security agreement, but have not yet determined if a certificate of title, signed by the debtor, satisfies the UCC's minimal requirements.[11] The most

---

[10] Owen argues in his closing brief that Darlene Spade, as an employee of the Department of Motor Vehicles testified that "the signature of the Certificate of Titles did not mean that the Plaintiff release [*sic*] his ownership to the Defendant." The Court has reviewed Ms. Spade's testimony, she actually testified that "by signing where [Owen] did [he] released his interest in [the vehicles]." She did not speculate to whom Owen released his interest in the vehicles or why.

[11] The Court is aware that other courts have arrived at differing conclusions when faced with the question of whether a signed certificate of title or subsequent application for title met the

(continued...)

MEMORANDUM OF DECISION - 7

closely analogous Idaho case is *Simplot*.  There, two promissory notes containing

the words "SECURITY: 1956 GMC bus." were signed by the debtor.  *Simplot*,

805 P.2d at 449.  As in the current case, the debtor, as owner of the vehicle, signed

the certificate of title on the line labeled "transfer of title."  *See Simplot*, 805 P.2d

at 479 (Idaho Ct. App.).  The Idaho Supreme Court held that the simple notation in

the promissory notes that a particular bus was "security" together with the

endorsement and delivery of the certificate of title, satisfied Idaho Code

§ 28-9-203 and constituted an enforceable security agreement.  805 P.2d at

450–51.

> The Idaho Supreme Court explained that:
>
> [N]o magic words are necessary to create a security interest and . . . the *agreement itself need not even contain the term "security interest."* This is in keeping with the policy of the code that form should not prevail over substance and that, *whenever possible, effect should be given to the parties' intent.*

---

[11](...continued)
requirements of § 9-203.  *Compare Hall v. Hopkins (In re Jacobs)*, No. 05-8078-JDP (Bankr. D. Idaho Feb. 10, 2006) (holding a signed vehicle application and other supporting documents satisfied Idaho Code § 28-9-203); *Roan v. Murray*, 556 N.W.2d 893, 895 (Mich. Ct. App. 1996) (holding that a debtor-signed application for a certificate of title constitutes a security agreement); *Winshall v. McCormick, (In re McCormick)*, 24 B.R. 718 (Bankr. E.D. Mich. 1982) (same); *Kreiger v. Hartig*, 527 P.2d 483 (Wash. Ct. App. 1974) (same); *Clark v. Vaughn*, 504 S.W.2d 550 (Tex. Civ. App. 1973) (holding a debtor signed certificate of title sufficient to constitute a security agreement); *with Wyatt v. Nowlin,* 338 B.R. 76 (Bankr. W.D. Miss. 2006) (finding a bill of sale and certificate of title listing creditor as a lienholder insufficient to satisfy § 9-203); *Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722 (Bankr. N.D. Ohio 1999) (finding no security agreement when presented with only debtor signed application for certificate of title) and *White v. Household Fin. Corp.*, 302 N.E.2d 828 (1973) (same).  While these authorities are helpful, it is the Court's duty to determine how Idaho state courts would resolve the question as presented on the instant facts.

MEMORANDUM OF DECISION - 8

*Simplot*, 805 P.2d at 452 (quoting *Idaho Bank & Trust Co. v. Cargill*, 665 P.2d 1093, 1097 (Idaho Ct. App. 1983)) (emphasis added).

In *Simplot*, the Idaho Supreme Court noted that "'the principal test for determining whether a transaction is to be treated as [creating] a security interest is: [I]s the transaction intended to have effect as security.'"  805 P.2d at 451 (quoting *In re Miller*, 545 F.2d 916, 918 (5th Cir. 1977)).  In other words, did the parties create or provide for a security interest.

A leading treatise is consistent in its analysis, describing the purpose of a *written* security agreement and noting that 9-203 of the UCC "merely contemplates *objective indicia of the possibility* of an underlying actual agreement – here an agreement for security."  White & Summers, Uniform Commercial Code, § 31-3 (5th ed. 2002) (emphasis added).

The Court must decide if, under Idaho law, the signed certificates of title were intended to have effect as security.  As noted, Owen's signature is ambiguous.  It may have been intended to transfer his entire ownership interest; it may have been intended to provide a lien; it may have been affixed in error and not intended to do anything.  However, it does provide an indication of the *possibility* of a security agreement.  Thus, the Court must turn to parol evidence to determine the parties' intent behind the signed document.  *See* Idaho Code § 28-9-203 cmt. 3 (allowing a party to introduce parol evidence to determine the intent behind a transfer that is absolute on its face); *see also* White & Summers, § 31-3

MEMORANDUM OF DECISION - 9

("[I]n problem cases, the writing may barely meet the objective test, leaving for further factual inquiry the question whether the parties also actually intended to create a security interest.").

Owen argues that he did not deliver the certificates of title to Lundstrom and that he did not enter Lundstrom's name on the certificates. Instead, he claims he signed the certificates as security for another creditor and Lundstrom stole the signed certificates of title. He disputes that the parties intended to create a security interest on his debts to Lundstrom evidenced by the IOUs.

However, Lundstrom testified that Owen handed her the signed certificates of title as security for the debts he owed to her, and that she later perfected her lien by placing her name in the "lienholder" section and submitting applications for certificates of title to the Department of Motor Vehicles. Lundstrom also produced testimony from several witnesses, including some of Owen's friends, to the effect that Owen stated he intended to provide Lundstrom with a security interest in the vehicles and he gave her the vehicle titles to hold until he could pay her back.

Moreover, Lundstrom introduced a set of state court interrogatories from Owen himself, in which he requested:

> **REQUEST FOR ADMISSION NO. 79:** Please admit that the vehicle titles were provided as a good faith gesture for restoring her [Lundstrom's] trust in Plaintiff [Owen], which were concerns emanating from the relationship counselor you [Lundstrom] were seeing.

MEMORANDUM OF DECISION - 10

Ex. 9 at 14.  At trial, Owen denied delivering the signed certificates of title.  He provides no cogent explanation, in light of that denial, for issuing the above request for admission.  The testimony of Lundstrom and her witnesses is, on the other hand, consistent.  The Court concludes on a preponderance of the evidence that the parties intended to create a security agreement granting Lundstrom a security interest in the vehicles.

**CONCLUSION**

Though the Owen-signed certificates of title are ambiguous, the balance of the evidence supports the conclusion that they satisfy the minimal requirements of I.C. § 28-9-203.  The whole of the evidence establishes that Owen intended the vehicles to be security for his debt to Lundstrom evidenced by the IOUs.[12] Therefore, Lundstrom holds valid and perfected liens on the vehicles.  Such liens pass through bankruptcy unaffected by Owen's discharge.  Therefore, Owen's complaint shall be dismissed and Owen shall take nothing thereby.[13]

The Court will enter a separate judgment consistent with this Decision.

---

[12]  The parties did not establish that the vehicles were security for any debt other then the IOUs, thus Lundstrom's liens on the vehicles are limited to the amount that remains due and owing under those documents.

[13]  The determination that Lundstrom holds a valid lien necessarily results in dismissal of the complaint against her, and it also requires dismissal of the complaint against the absent ITD.

MEMORANDUM OF DECISION - 11

DATED: July 7, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12

## <u>CERTIFICATE OF SERVICE</u>

A "notice of entry" of this Memorandum of Decision has been served on Registered Participants as reflected by the Notice of Electronic Filing.  A copy of the Memorandum of Decision has also been provided to non-registered participants by first class mail addressed to:

Rickey Errol Owen
206 N. 4th Ave
Sandpoint, ID 83864

Adv. Case No. 04-6181-TLM

Dated: July 7, 2006


_____/s/_____
Suzanne Hickok
Law Clerk to Chief Judge Terry L. Myers

MEMORANDUM OF DECISION - 13